```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                       ALBANY DIVISION
```

FRIENDSHIP EMPOWERMENT AND           \*
ECONOMIC DEVELOPMENT, CDC, INC.
d/b/a FRIENDSHIP FIRST STEPS         \*
CHILD DEVELOPMENT CENTER
                                     \*
         Plaintiff,
                                     \*
vs.                                        CASE NO. 1:04-CV-132 (CDL)
                                     \*
WALB-TV; THE LIBERTY CORPORATION
d/b/a WALB-TV and COSMOS             \*
BROADCASTING CORPORATION d/b/a
WALB-TV                              \*

         Defendants.                 \*

                                     \*

## O R D E R

This defamation action arises from Defendants' television broadcast of a report in which a mother who had her child enrolled in Plaintiff's day care facility accused Plaintiff of abusing her child. Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 16.) Because the Court finds that no reasonable juror could conclude that the report was false, the Court grants Defendants' Motion for Summary Judgment.

### BACKGROUND

Friendship Empowerment and Economic Development Center ("Friendship") is a non-profit corporation located in Tifton, Georgia. In November 2002, Friendship opened a day care center located in Tifton—Friendship First Steps Child Development Center ("First Steps").

LaTonya Young of Tifton enrolled her son, Jacobie, in First Steps. On April 14, 2003, Ms. Young decided to take her son out of

First Steps.  Almost four months later, on August 6, 2003, Ms. Young anonymously received a videotape in her mailbox.  When Ms. Young played this video in her VCR, she discovered that it was a copy of the surveillance tape from First Steps.  The video tape played on a speed faster than real time because, as subsequent investigation revealed, First Steps recorded its surveillance on this faster speed.  Upon seeing the video, Ms. Young concluded that it showed an employee of First Steps throwing her son on the floor and kicking him.  Ms. Young called the Sheriff's Department and WALB-TV, an Albany, Georgia, news station.

   WALB-TV assigned reporter Brannon Stewart, along with cameraman Robert Bramblett, to report Ms. Young's story.  When Ms. Stewart and Mr. Bramblett arrived at Ms. Young's house, Ms. Young showed them the surveillance video.  Ms. Young had not previously shown the video to the Tift County Sheriff's deputies, who were also present at the time.  Mr. Bramblett filmed the playing of the surveillance video as it played on Ms. Young's television.

   After viewing the video, Ms. Stewart interviewed Ms. Young concerning her allegation of child abuse.  Ms. Stewart and Mr. Bramblett then went to First Steps, but were unable to get a comment because it was after hours.  Ms. Stewart and Mr. Bramblett then returned to the WALB-TV station in Albany, edited the story, and first aired it on the August 6, 11:00 P.M. news.  At no time did WALB-TV attempt to review the surveillance video footage in real time.  The report was repeated on August 7 during the 6:00 A.M., noon, and 6:00 P.M. broadcasts.

   The contested broadcast begins with Mr. Bramlett's footage of the surveillance video.  The anchor, referring to the story as one

2

involving allegations of possible child abuse, explains that Ms. Young believes the surveillance video proves her son was abused. The report created by Ms. Stewart and Mr. Bramlett is then shown. This report begins by introducing Jacobie and LaTonya Young. The First Steps surveillance video is shown again, followed by Ms. Young explaining that the tape shows a worker "throwing [her son] on the floor and kicking him." Ms. Stewart then states that the video was given to Ms. Young anonymously, and that the tape is from the same day that Ms. Young took her son out of First Steps. Finally, Ms. Stewart explains that Ms. Young has turned the surveillance video over to the Tift County Sheriff's Department and plans to press charges against the day care worker.

On August 14, 2003, WALB-TV aired a follow-up story. This story explained that when the sheriff's department played the surveillance video in real time and examined it more closely, it was the department's opinion that it showed no child abuse. This story was repeated in three broadcasts on August 14 and 15. Despite the follow-up broadcasts explaining that the legal authorities had concluded that no abuse occurred, First Steps claims that it permanently lost eleven customers as a result of WALB-TV's story. It seeks damages proximately caused by this alleged defamation.

## DISCUSSION

**I.  Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial. *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court may draw inferences from undisputed facts. The Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draws all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

**II. Defamation**

   A.   Defamacast

In Georgia, defamation by radio or television is referred to as "defamacast" and includes elements of both libel and slander. *See Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888, 520 S.E.2d 721, 724 (1999) (citations omitted); *Strange v. Henderson*, 223 Ga. App. 218, 219, 477 S.E.2d 330, 332 (1996) (citations omitted). "A libel is a false and malicious defamation of another . . . tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). Slander is oral defamation. O.C.G.A. § 51-5-4(a). Slander *per se* occurs when a party imputes to another a crime punishable by law. O.C.G.A. § 51-5-4(a)(1); *Parks v. Multimedia Techs., Inc.*, 239 Ga. App. 282, 293, 520 S.E.2d 517, 527 (1999).

In order for a defamation to be actionable, it "must be both false and malicious." *Jaillett*, 238 Ga. App. at 888, 520 S.E.2d at 724 (quotation marks and citation omitted). The plaintiff has the burden of proving a statement's falsity. *Id.* (citation omitted). When there is an alleged defamacast "the truth of the charge may always be proved in justification." O.C.G.A. § 51-5-6; *Jones v. Neighbor Newspapers, Inc.*, 142 Ga. App. 365, 369, 236 S.E.2d 23, 25 (1977). In order for a report to be true, it must be "substantially accurate." *Jones*, 142 Ga. App. at 369, 236 S.E.2d at 25 (quotation marks and citation omitted). The facts cannot be "misstated, distorted, or arranged so as to convey a false and defamatory meaning," but "there is no liability for a somewhat less than complete report of the truth." *Id.* at 26, 329 (quotation marks and citation omitted). Therefore, if a television station makes a report

5

in good faith that is substantially accurate, that station has a complete defense. *Id.; see also McCracken v. Gainesville Tribune, Inc.*, 146 Ga. App. 274, 275, 246 S.E.2d 360, 362 (1978) ("In the field of defamation, truth and absolute privilege are the only two complete defenses to publication of communications which would otherwise be slanderous or libelous.").

B.  WALB-TV's Broadcast

Defendants claim that summary judgment is proper because the broadcast was true.[1]  Plaintiff replies that WALB-TV's broadcast was false in two ways.  First, Plaintiff asserts that WALB-TV altered the surveillance video shown in the broadcast.  Second, Plaintiff argues that the allegations contained in the report were false and WALB-TV knew, or should have known, that they were false.  The Court finds that no evidence exists from which a reasonable juror could conclude that WALB-TV altered the surveillance video.  Moreover, the Court further finds that no reasonable juror could conclude that the report was false.  Therefore, the Court finds that the report was substantially and materially truthful as a matter of law.  Accordingly, Defendants are entitled to summary judgment.

*1. Alteration of Surveillance Video*

Plaintiff first claims that WALB-TV "mechanically altered the video tape" to make it appear that an employee of First Steps "repeatedly kicked [a] child over and over."  In order to support this allegation, the Plaintiff cites the Director of First Steps,

---

[1] Defendants also claim that they are entitled to summary judgment for other reasons.  Since the Court finds that the broadcast was true as a matter of law, it is unnecessary to address Defendants' remaining legal arguments.

6

Leslie Turner, who explains in her deposition that the surveillance video "was going real fast and it looked like [the First Steps employee] was just opening the door and just kicking [Jacobie], closing it, just kicking [Jacobie] over and over." (Turner Dep. 40:9-11, Feb. 18, 2005). In the very next question, however, Ms. Turner is asked about the speed of the video:

>   Q:   All right. When you ordinarily play the security film that y'all take at First Steps, is that the speed that you see when you look at that film?
>
>   A:   No, sir. We have a special recorder that we play it back on and it slows it down.
>
>   Q:   I see, okay. If you don't play it on a special recorder, is it in fast speed?
>
>   A:   Yes, sir.
>
>   Q:   Okay. In Paragraph 7, it's stated that WALB mechanically altered the videotape. Do you have any particular knowledge of what WALB might have done to the videotape before they broadcast it?
>
>   A:   No, sir.

(Turner Dep. 40:12-40:25.) Ms. Turner clearly explains (1) that the video, when unaltered, is in high speed and (2) that she has no personal knowledge of whether WALB-TV altered the surveillance video. In a motion for summary judgment, the plaintiff "may not rest upon the mere allegations or denials of [its] pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 n.3 (11th Cir. 1993). Plaintiff's unsupported assertion that the surveillance video has been altered does not create a material question of fact.

Furthermore, Defendants have provided uncontradicted evidence that WALB-TV did not alter the video. First, Robert Bramblett, the

7

cameraman of the contested broadcast, swears by affidavit that he acquired the footage of the surveillance video for WALB-TV by filming the video as it was being played on Ms. Young's television. (Bramblett Aff. ¶ 5.)  Mr. Bramblett never actually received a copy of the surveillance video from Ms. Young.  (*Id.* ¶ 7.)  Brannon Stewart, the reporter in the contested broadcast, also attests that Mr. Bramblett filmed a copy of the surveillance video as it was being played on Ms. Young's television through Ms. Young's VCR.  (Stewart Aff. ¶ 5.)  Ms. Stewart then avows that WALB-TV "did not alter the video . . . [t]he portions that were broadcast were just as Mr. Bramblett had filmed it."  (*Id.* ¶ 9.)

Therefore, the evidence shows that the surveillance video that Ms. Young anonymously received was in high speed.  This, however, was not the result of any mechanical alteration performed by WALB-TV. First Step's own director explained that the video had to be played on a "special recorder" for it to be slowed down to real time.  The publication of the surveillance video as played on a regular VCR was, therefore, a truthful depiction of the surveillance video.

### *2. Allegations of Child Abuse*

Plaintiff next contends that the allegations made by WALB-TV in its broadcasts were false and that WALB-TV knew or should have know that they were false at the time of their broadcast.  "[A] broadcaster may be liable even for a newsworthy report if it contains a defamatory statement and the broadcaster failed to employ the procedures a reasonable broadcaster under the circumstances would have employed to assure the accuracy of the statement before broadcasting the report."  *Diamond v. Am. Family Corp.*, 186 Ga. App. 681, 685, 368 S.E.2d 350, 354 (1988); *Triangle Publ'ns, Inc. v.*

*Chumley*, 253 Ga. 179, 180, 317 S.E.2d 534, 536 (1984) ("[T]he applicable standard is ordinary care."). Therefore, the court must preliminarily determine whether the broadcast was substantially and materially truthful. If it was, that ends the inquiry because there can be no defamation for a truthful report regardless of the degree of care exercised by the broadcaster.

WALB-TV reported that Ms. Young accused an unnamed employee of First Steps of dropping and kicking her son, which in her opinion constituted child abuse. The broadcast showed Ms. Young making this accusation and showed the actual video relied upon by Ms. Young to support her allegations. The broadcast also included statements by WALB-TV that "an anonymous video tape launch[ed] an investigation of child abuse in Tift County;" that "deputies are launching an abuse investigation after seeing a surveillance tape;" and that Ms. Young "has turned the tape over to the Tift County Sheriff's Department and plans on pressing charges against the worker." Additionally, WALB-TV referred to the incident as resulting in "allegations of child abuse" and "possible child abuse."

WALB-TV's only reference to the surveillance video footage was that it "shows Jacobie laying on the floor, kicking his legs until another [day care] worker comes to get him." This statement is true, regardless of whether the video is shown in real time or fast time. It was Ms. Young who said in the broadcast that the surveillance video shows a First Step employee "throwing [Jacobie] on the floor and kicking him." This statement by Ms. Young is her opinion of what the surveillance video shows. A statement of opinion may be actionable as defamation when it asserts an objective fact and that fact is capable of being proved false. *Jaillett*, 238 Ga. App. at

9

890, 520 S.E.2d at 725-26 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).  However, when "an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts."  *Id.* at 890, 726.  "[A] statement of [opinion] is actionable only if it implies the allegation of *undisclosed* defamatory facts as the basis for the opinion." *Id.* (alterations in original) (citation omitted).

   Nothing in the broadcast implies that Ms. Young had additional information about the alleged child abuse which caused her to form her opinion.  In fact, it is obvious from the broadcast that her opinion was formed solely from watching the surveillance video.  A viewer would have seen the same surveillance video that Ms. Young saw and would reasonably conclude that her allegation of child abuse is based only on the surveillance video.  Therefore, Ms. Young's statement that the surveillance video shows a First Steps employee dropping her son to the ground and kicking him is not defamatory.

   Plaintiff suggests that the fact that the surveillance video was played in a speed faster than real speed distorted what actually happened and thus the broadcast of the video alone was defamatory. The Court rejects this argument.  First, as previously explained, it is undisputed that Defendants broadcasted the surveillance video in exactly the same speed that it was in when it left Plaintiff's facility and in exactly the same speed it was in when it was first viewed by Ms. Young.  Therefore, it was an accurate depiction of what Ms. Young viewed in forming her opinion about the child abuse. Furthermore, the Court finds that the playing of the video in this speed does not distort the picture to the extent that it is not

10

substantially and materially accurate. Finally, when viewed in the context of the entire report, it is clear that the difference in the speed of the video does not cause the broadcast to become defamatory. *See S. Co. v. Hamburg*, 220 Ga. App. 834, 838, 470 S.E.2d 467, 471 (1996) ("So the whole item . . . should be read and construed together, and its meaning and signification thus determined.") (citation omitted); *Brewer v. Rogers*, 211 Ga. App. 343, 346, 439 S.E.2d 77, 80 (1993) (explaining that defamatory statement should be construed as a whole); *Garland v. State*, 211 Ga. 44, 46, 84 S.E.2d 9, 11 (1954) (same).

In summary, all of the statements broadcast in the report were true. Ms. Young did accuse an unnamed employee of First Steps of dropping her child on the floor and kicking him. She further opined that this constituted child abuse. She referred the matter to the legal authorities who were in the process of investigating it. The broadcast also included the exact video that Ms. Young relied upon in support of her allegations. The report was substantially and materially truthful. No reasonable juror could reach any other conclusion. Therefore, summary judgment in favor of Defendants is appropriate.

## CONCLUSION

For the reasons explained in this order, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED, this 10th day of May, 2006.

                                               S/Clay D. Land
                                               CLAY D. LAND
                                               UNITED STATES DISTRICT JUDGE